**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ECONO-MED PHARMACY, INC., on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:16-cv-00789-TWP-MPB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION TO STAY PROCEEDINGS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND LEGAL BACKGROUND .......................................................................... 4

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ...................................................................................................................... 9

I.    A STAY IS WARRANTED BECAUSE THE OUTCOME IN EITHER PENDING
      PROCEEDING COULD SIGNIFICANTLY NARROW THE SCOPE OF THE
      PUTATIVE CLASS AND DEFENDANT'S ALLEGED LIABILITY ............................ 9

      A.    Defendant Sends Faxes to Pharmacies With Their Permission ........................... 10

      B.    A Decision to Waive or Invalidate the Solicited Fax Rule Will Impact Plaintiff's
            Claim and Proposed Class. ................................................................................. 10

II.   THE PRIMARY JURISDICTION DOCTRINE SUPPORTS A STAY ......................... 13

      A.    The FCC Has Exclusive Authority to Waive Enforcement of Its Rules .............. 13

      B.    The D.C. Circuit's Review of the FCC's Solicited Fax Rule is Exclusive and
            Binding Upon This Court. ................................................................................... 13

      C.    The Court's Discretionary Factors Further Support Application of the Primary
            Jurisdiction Doctrine. ......................................................................................... 15

            1.    The Complaint raises a legal question within the FCC's technical and
                  policy expertise. ....................................................................................... 15

            2.    Defendant would be subject to potentially conflicting orders absent a stay.
                  ................................................................................................................. 16

            3.    The D.C. Circuit appeal is fully briefed and the FCC Waiver proceeding is
                  underway. ................................................................................................. 17

III.  THIS LITIGATION IS AT ITS EARLIEST STAGES, AND PLAINTIFF WILL NOT
      SUFFER ANY PREJUDICE OR MATERIAL DISADVANTAGE AS A RESULT OF
      THE REQUESTED STAY ......................................................................................... 18

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Arsberry v. Illinois*,
   244 F.3d 558 (7th Cir. 2001) ..................................................................................................7

*Bais Yaakov of Spring Valley, et al. v. FCC*,
   No. 14-1234 (D.C. Cir.)................................................................................................*passim*

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
   816 F.3d 935 (7th Cir. 2016) ..................................................................................................4

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ..................................................................................................4

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
   606 F.3d 443 (7th Cir. 2010) ..................................................................................................7

*Charvat v. EchoStar Satellite, LLC*,
   630 F.3d 459 (6th Cir. 2010) ................................................................................................13

*Degnen v. Gerzog*,
   No. 4:15-cv-1103-RLW, 2015 WL 9645986 (E.D. Mo. Aug. 5, 2015) ....................11, 14, 19

*Douglas Wahlberg v. FCC, et al.*,
   No. 14-3497 (8th Cir.) ............................................................................................................6

*Espejo v. Santander Consumer USA, Inc.*,
   No. 11 C 8987, 2014 WL 4347185 (N.D. Ill. Aug. 28, 2014)...............................................18

*Gensel v. Performant Tech., Inc.*,
   No. 13-cv-1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015) ...............................11, 17, 18

*Grice Eng'g, Inc. v. JG Innovations, Inc.*,
   691 F. Supp. 2d 915 (W.D. Wis. 2010)..................................................................................6

*Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*,
   No. 15-cv-1038, 2016 WL 270224 (E.D. Wis. Jan. 20, 2016)........................................11, 12

*Indiana Bell Tel. Co., Inc. v. McCarty*,
   362 F.3d 378 (7th Cir. 2004) ..................................................................................................8

*Johnson v. Navient Solutions, Inc.*,
   No. 1:15-cv-00716, 2015 WL 8784150 (S.D. Ind. Dec. 15, 2015) .........................................6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................................6

*Michigan Bell Tel. Co. v. Lark,*
  373 F. Supp. 2d 694 (E.D. Mich. 2005) ................................................................. 13

*Midwest Indep. Transmission Sys. Operator, Inc. v. Duquesne Light Co.,*
  No. 1-09:cv-1289-TWP-DML, 2010 WL 2771873 (S.D. Ind. July 12, 2010)
  (Pratt, J.) ......................................................................................................... 7, 8

*Nack v. Walburg,*
  715 F.3d 680 (8th Cir. 2013), *cert denied,* 134 S. Ct. 1539 (2014) ................................ 14, 17

*Nack v. Walburg,*
  No. 4:10-cv-00478-AGF, 2013 WL 4860104 (E.D. Mo. Sept. 12, 2013) ......................... 11, 14

*Peoria v. Gen. Elec. Cablevision Corp.,*
  690 F.2d 116 (7th Cir. 1982) ......................................................................................... 15

*Physicians Healthsource, Inc. v. Endo Pharm.,*
  No. 14-cv-02289, Dkt. No. 27, Order (E.D. Pa. Jan. 5, 2015) .................................... 11, 15, 16

*Physicians Healthsource, Inc. v. Masimo Corp.,*
  No. 8:14-cv-00001 JVS-AN, In Chambers Order Granting Defs. Mot. to Stay,
  Dkt. No. 47 (C.D. Cal. May 22, 2014) ......................................................................... 11, 12, 14

*Physicians Healthsource, Inc. v. Purdue Pharma L.P.,*
  No. 3:12-cv-1208-SRU, 2014 WL 518992 (D. Conn. Feb. 3, 2014) .................. 11, 12, 14, 19

*Raitport v. Harbour Capital Corp.,*
  No. 09-cv-156-SM, 2013 WL 4883765 (D.N.H. Sept. 12, 2013) ................................... 11, 14

*Reardon v. Uber Techs., Inc.,*
  115 F. Supp. 3d 1090 (N.D. Cal. 2015) ......................................................................... 16

*Ryan v. Chemlawn Corp.,*
  935 F.2d 129 (7th Cir. 1991) ......................................................................................... 8, 16

*Sandusky Wellness Ctr., LLC, et al. v. FCC, et al.,*
  No. 14-1235 (D.C. Cir.) ................................................................................................. 6

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.,*
  788 F.3d 218 (6th Cir. 2015) ......................................................................................... 1

*St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.,*
  No. 4:12-Cv-2224-JCH, 2013 WL 3988671 (E.D. Mo. July 17, 2013) .................... 11, 12, 14

*St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.,*
  No. 4:13-cv-958-JAR, 2013 WL 5436651 (E.D. Mo. Sept. 27, 2013) ...................... 11, 13, 14

*Stoll v. Kraft Foods Global*,
  No. 1:09-cv-0364-TWP-DML, 2010 WL 3702359 (S.D. Ind. Sept. 6, 2010)
  (Pratt, J.) .................................................................................................8, 9, 15

*United States v. DISH Network, LLC*,
  No. 09-3073, 2011 WL 475067 (C.D. Ill. Feb. 4, 2011) ....................................... 15

*Whiteamire Clinic P.A., Inc. v. Quill Corp. et al.*,
  No. 1:12-cv-05490, Order, Dkt. No. 170 (N.D. Ill. Apr. 9, 2014) ......................... 11

*Wright v. Target Corp.*,
  No. 14-cv-3031, 2015 WL 8751582 (D. Minn. Dec. 14, 2015) ............................. 16

**Statutes**

28 U.S.C. § 2342(1) .........................................................................................2, 7, 13

47 U.S.C. § 227 ......................................................................................1, 2, 4, 5, 17

47 U.S.C. § 402(a) ....................................................................................................... 7

47 U.S.C. § 405(a) ....................................................................................................... 7

Administrative Orders Review Act ("Hobbs Act") ..............................................*passim*

Junk Fax Prevention Act of 2005 ............................................................................. 4

Telephone Consumer Protection Act...................................................................*passim*

**Other Authorities**

47 C.F.R. § 1.3.......................................................................................................... 13

47 C.F.R. § 64.1200(a)(4)(iv) ............................................................................1, 2, 5

Fed. R. Civ. P. 9(b) .................................................................................................. 18

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
  1991 et al.*, Order, 29 FCC Rcd 13998 (Oct. 30, 2014) ...............................2, 3, 5, 18

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
  1991 et al.*, Order, 30 FCC Rcd 14057 (Dec. 9, 2015)......................................5, 15

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
  1991 et al.*,
  Order, 30 FCC Rcd 8598 (Aug. 28, 2015) ..............................................................5

Yuri R. Linetsky, *Protection of "Innocent Lawbreakers": Striking the Right Balance in the Private Enforcement of the Anti "Junk Fax" Provisions of the Telephone Consumer Protection Act*, 90 Neb. L. Rev. 70, 97 (2011)......................................4

## INTRODUCTION

Defendant Roche Diagnostics Corporation[1] ("Defendant"), by and through its undersigned counsel, respectfully moves the Court for a stay of all proceedings in this action pending decisions (1) by the Federal Communications Commission ("FCC" or "Commission") on Defendant's Petition for Waiver of Section 64.1200(a)(4)(iv) of the Commission's Rules, CG Docket Nos. 02-278 & 05-338, attached hereto as Exhibit A ("Petition"); and (2) by the United States Court of Appeals for the District of Columbia Circuit in the appeal of the FCC's October 30, 2014 Order implementing the Telephone Consumer Protection Act ("TCPA") in *Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir.). As discussed further below, the outcome of these proceedings will have a controlling effect on threshold legal issues in this litigation, affecting both the potential scope of Defendant's alleged liability and the potential composition of Plaintiff's alleged class. A stay is therefore appropriate and warranted under the primary jurisdiction doctrine and for reasons of judicial economy.

Plaintiff Econo-Med Pharmacy, Inc. ("Plaintiff") alleges that Defendant has violated the TCPA (codified, as amended, at 47 U.S.C. § 227) by failing to include compliant opt-out notices in fax advertisements sent to Plaintiff and other members of a putative class. (Compl. ¶¶ 13–18, 31–33.) Plaintiff's proposed class includes any entity that has received from Defendant within the past four years (the limitations period provided by the TCPA) a fax advertisement containing an opt-out notice "identical or substantially similar" to the facsimile attached as Exhibit A to the Complaint.[2] (*Id.* ¶ 18.) The Complaint and proposed class definition do not differentiate

---

[1]    Although Roche Diagnostics Corporation is the named defendant, the proper party is Roche Diabetes Care, Inc.

[2]    Defendant denies that Exhibit A to the Complaint is an "advertisement" under the TCPA. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 223 (6th Cir. 2015) (holding under TCPA that a formulary update is informational rather than an

between putative class members who consented to receive faxes and those who allegedly did not. Instead, citing an FCC regulation implementing the TCPA, Plaintiff alleges that "*regardless of whether the fax is unsolicited*, a faxed advertisement is illegal unless it includes an opt-out notice . . . that complies with the TCPA's requirements." (*Id.* ¶ 30, citing 47 C.F.R. § 64.1200(a)(4)(iv) (hereinafter, the "Solicited Fax Rule") (emphasis added).) Plaintiff's Complaint thus seeks to impose TCPA liability on Defendant for solicited faxes, contrary to the express language of the statute. *See* 47 U.S.C. § 227(b)(1) ("It shall be unlawful for any person . . . (C) to use any [device] . . . to send, to a telephone facsimile machine, an *unsolicited* advertisement, unless . . . (iii) the *unsolicited* advertisement contains a notice meeting the requirements [of the statute].") (emphasis added).

However, the FCC's legal authority to promulgate the Solicited Fax Rule on which Plaintiff relies has been challenged and is currently under review in *Bais Yaakov*, pursuant to the Administrative Orders Review Act (the "Hobbs Act"). *See* 28 U.S.C. § 2342(1) (reserving to federal courts of appeals the power "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all final FCC orders). Briefing in this consolidated multidistrict proceeding was completed months ago and oral argument is anticipated. If the D.C. Circuit holds that the FCC lacked authority under Section 227(b) to apply the opt-out notice requirement to solicited advertisements, the foundation for Plaintiff's proposed TCPA claim and class would crumble.[3]

Moreover, the FCC has acknowledged that the process it followed to enact the Solicited Fax Rule created confusion and led to inadvertent violations of the statute. *See Rules and*

---

advertisement). Although a contested issue in this action, the instant motion does not ask the Court to resolve that question.

[3]     Plaintiff's separate state law claim is wholly dependent on the alleged TCPA violation. (Compl. ¶ 39.)

*Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, Order, 29 FCC Rcd 13998, 14009–10, ¶¶ 24–25 (Oct. 30, 2014).  The FCC thus established a procedure for parties to seek a waiver of the Solicited Fax Rule for solicited fax advertisements sent prior to April 30, 2015.  *Id*. at 14011 & 14013, ¶¶ 29–30, 36.  The FCC has granted over 100 such waivers already, and more petitions (including Defendant's) are currently pending.  If its Petition is granted, Defendant would be shielded from potential TCPA liability for solicited advertisements sent prior to April 30, 2015, representing approximately three-quarters of the class period alleged in the Complaint.

In short, Defendant's potential liability for an alleged technical violation[4] would be sharply curtailed under either scenario: if the Solicited Fax Rule is invalidated, or if the Rule is waived.  Because either result will significantly affect the scope of Plaintiff's action and proposed class, this Court should stay the litigation pending the outcome of the above proceedings.  Many other courts have done the same in TCPA suits across the country.

Plaintiff will not be prejudiced by a stay.  It does not allege any ongoing injury caused by receiving a fax with an allegedly non-compliant opt-out notice, and Defendant is not currently sending faxes to Plaintiff.  The lawsuit was only recently filed, and Defendant's prompt request for a stay will spare both parties from expending unnecessary resources to litigate a legal issue— the purported applicability of the opt-out notice requirement to *solicited* advertisements— that is central to Plaintiff's claim and will be resolved in the pending Hobbs Act proceeding or otherwise may be waived by the FCC.  Moreover, a ruling favoring Defendant in either the D.C. Circuit or the FCC proceeding will significantly impact discovery and class certification proceedings in this action, as the issue of recipient *consent* would be relevant to resolving

---

[4]     The fax attached as Exhibit A to the Complaint plainly contains an opt-out notice.
Plaintiff's grievance is that the form of notice is inadequate.

Plaintiff's claims.  Finally, the outcomes of those proceedings will likely affect the parties'

assessments for potential settlement.  Accordingly, and for the reasons explained further below,

this Court should stay this action pending final decisions in the above proceedings.

## FACTUAL AND LEGAL BACKGROUND

The TCPA, as amended by the Junk Fax Prevention Act of 2005, generally prohibits the

transmission of "*unsolicited* advertisements" via facsimile—that is, fax advertisements sent

without a recipient's "prior express invitation or permission."  47 U.S.C. §§ 227(b), 227(a)(5)

(emphasis added).  However, even unsolicited advertisements are permitted under the TCPA

when "(1) the sender and recipient have an established business relationship, (2) the recipient

voluntarily made its fax number available through specified means, or (3) the fax contained a

statutorily compliant notice."  *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938

(7th Cir. 2016) (citing 47 U.S.C. § 227(b)(1)(C)).

Acknowledging that communication technologies have evolved since the TCPA's

enactment in 1991, the Seventh Circuit observed as follows in *Bridgeview*:

> Fax paper and ink were once expensive, and this may be why
> Congress enacted the TCPA, but they are not costly today.  As a
> result, what motivates TCPA suits is not simply the fact that an
> unrequested ad arrived on a fax machine.  Instead, there is
> evidence that the persuasive nature of junk-fax litigation is best
> explained this way: it 'has blossomed into a national cash cow for
> plaintiff's attorneys specializing in TCPA disputes.'

*Id*. at 941 (internal citation omitted).[5]  The TCPA thus "makes violators strictly liable for

cumulatively very heavy statutory penalties" when the class action procedure is used.  *CE*

*Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 723 (7th Cir. 2011).

---

[5]    Quoting Yuri R. Linetsky, *Protection of "Innocent Lawbreakers": Striking the Right Balance in the Private Enforcement of the Anti "Junk Fax" Provisions of the Telephone Consumer Protection Act*, 90 Neb. L. Rev. 70, 97 (2011).

Congress authorized the FCC to issue regulations implementing the TCPA.  47 U.S.C.

§ 227(b)(2).  Ostensibly pursuant to this authority, the FCC promulgated the "Solicited Fax

Rule," 47 C.F.R. § 64.1200(a)(4)(iv), which requires that *all* fax advertisements contain a

compliant opt-out notice.  In other words, although the TCPA itself addresses only *unsolicited*

advertisements, the FCC unilaterally extended the opt-out notice requirement to advertisements

sent with the recipient's consent.  When TCPA defendants challenged the statutory basis for this

action and petitioned the agency to reconsider its Rule, the FCC reaffirmed its interpretation and

declared that it had the authority to regulate both solicited and unsolicited faxes pursuant to

Section 227(b) of the TCPA.  *See Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991 et al.*, Order, 29 FCC Rcd 13998 (Oct. 30, 2014) ("October 2014 Order").

At the same time, the FCC acknowledged that the process by which it promulgated the

Solicited Fax Rule caused justifiable confusion that may have caused fax senders to

inadvertently violate the rule.  *Id.* at 14010–11, ¶ 27.  Specifically, in an earlier order, the FCC

had stated that an opt-out notice was required only for *unsolicited* advertisements.  *Id.* at 14009,

¶ 24.  Acknowledging that its previous pronouncements had been inconsistent, the FCC waived

the opt-out notice requirement with respect to solicited advertisements sent by the petitioners

before April 30, 2015.  *Id.* at 14011, ¶ 29.  The FCC further stated that a waiver may be sought

by any "similarly situated" party that requests the same relief.  *Id.* at 14011–12, ¶ 30.  Since

October 2014, the FCC's Consumer and Governmental Affairs Bureau has granted such waivers

to more than 100 additional parties.[6]  Defendant filed its Petition for Waiver with the FCC on

June 2, 2016 (attached hereto as Ex. A).

---

[6]       *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*
*et al.*, Order, 30 FCC Rcd 8598, 8608 ¶ 11 (Aug. 28, 2015) ("August 2015 Order"); *Rules and*
*Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, Order, 30 FCC

After the FCC issued its October 2014 Order, several of the original petitioners sought judicial review of the FCC's declaration that Section 227(b) provided it with the requisite authority to promulgate the Solicited Fax Rule. Two challenges were filed in the D.C. Circuit, and another was filed in the Eighth Circuit.[7] The Judicial Panel on Multidistrict Litigation ("JPML") consolidated all three appeals into one proceeding before the D.C. Circuit, *Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir.). The consolidated *Bais Yaakov* appeal has now been fully briefed and the parties await a date for oral argument.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). While the decision to issue a stay is within this Court's sound discretion, the Court "should grant a motion to stay if a higher court in a separate case will decide issues of law that are significant to the case sought to be stayed." *Johnson v. Navient Solutions, Inc.*, No. 1:15-cv-00716, 2015 WL 8784150, at *1 (S.D. Ind. Dec. 15, 2015). Courts typically consider four factors in ruling on a motion to stay: *first*, whether the stay will "simplify the issues in question and streamline the trial"; *second*, whether the stay will "reduce the burden of litigation on the parties and on the court"; *third*, whether the litigation is "at an early stage"; and *fourth*, whether the stay would "unduly prejudice or tactically disadvantage the non-moving party." *See Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010); *see also Johnson*, 2015 WL 8784150, at * 1.

---

Rcd 14057, 14062 ¶ 10 (Dec. 9, 2015) ("December 2015 Order"). The FCC has requested public comments for waiver petitions filed in 2016 that are currently pending.

[7]      *Bais Yaakov of Spring Valley, et al. v. FCC, et al.*, No. 14-1234 (D.C. Cir.); *Sandusky Wellness Ctr., LLC, et al. v. FCC, et al.*, No. 14-1235 (D.C. Cir.); *Douglas Wahlberg v. FCC, et al.*, No. 14-3497 (8th Cir.).

In addition, the "primary jurisdiction" doctrine comes into play when, as here, the movant is seeking a stay on the basis of a pending agency proceeding or a potential challenge to an agency regulation.  The doctrine takes one of two forms.  *First*, in its "central and original form," the doctrine applies when "an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001).  In such cases, the "suit must stop and the issue must be referred to the agency for resolution." *Id.  Second*, in its alternative form, the doctrine permits a federal court to enter a stay and "refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight," even where the agency has not been given exclusive jurisdiction to resolve the issues in question. *Id.* (internal quotation marks omitted); *see also Midwest Indep. Transmission Sys. Operator, Inc. v. Duquesne Light Co.*, No. 1-09:cv-1289-TWP-DML, 2010 WL 2771873, at *1–2 (S.D. Ind. July 12, 2010) (Pratt, J.).

The Seventh Circuit has applied both forms of the primary jurisdiction doctrine.  For instance, in *CE Design, Ltd. v. Prism Bus. Media, Inc.*, the Seventh Circuit affirmed the district court's finding that, under the Hobbs Act, the FCC and federal courts of appeals have exclusive jurisdiction to decide whether to enforce a defendant's "established business relationship" defense under the TCPA.  606 F.3d 443, 450 (7th Cir. 2010).  The court noted that the Hobbs Act "reserves to the courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a), and that before seeking relief from an appellate court, a party aggrieved by the FCC's final order must petition the FCC for reconsideration, *see* 47 U.S.C. § 405(a)." *Id.* at 446.  The Seventh

Circuit further explained that the Hobbs Act "does not leave private parties without a mechanism for judicial review of agency action; it merely requires litigants to seek review through its specific procedural path." *Id.* at 450.  That congressionally-mandated procedural path "serves a number of valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA." *Id.* (internal quotation marks omitted); *see also Indiana Bell Tel. Co., Inc. v. McCarty*, 362 F.3d 378, 389 n.13 (7th Cir. 2004) ("Under the Hobbs Act, the Federal Courts of Appeals have exclusive jurisdiction over challenges to FCC regulations.").  As this Court has acknowledged,

> [t]here are several strong policy reasons for applying primary jurisdiction: (1) it promotes consistency and uniformity, particularly where the development of the law is dependent upon administrative policy; (2) administrative agencies are uniquely qualified to handle certain complex areas outside of the conventional expertise of courts; and (3) it serves judicial economy because, if a dispute is fully resolved by an agency, the court need not intervene.

*Stoll v. Kraft Foods Global*, No. 1:09-cv-0364-TWP-DML, 2010 WL 3702359, at *5 (S.D. Ind. Sept. 6, 2010) (Pratt, J.) (citing *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991)).

Although there is no "fixed formula" for when the primary jurisdiction doctrine should be applied, *see Midwest Indep. Transmission Sys.*, 2010 WL 2771873, at *2, this Court has previously considered:  (1) "whether the Court is being called on to decide factual issues not within the conventional experience of judges"; (2) whether the Defendants "could be subjected to conflicting orders of both the Court and the administrative agency"; (3) "whether relevant agency proceedings have actually been initiated" and whether the agency has "demonstrated

diligence in resolving the issue"; and (4) "whether the Court can fashion the type of relief requested by the plaintiff."  *Stoll*, 2010 WL 3702359, at *5.

## ARGUMENT

Issuing a stay makes good sense at this early stage of the case.  Each of the two pending proceedings—the Hobbs Act proceeding at the D.C. Circuit and the waiver proceeding at the FCC—plainly have the potential to streamline the legal issues in this case, shape the scope of discovery, and significantly narrow Plaintiff's claim and proposed class.  If the consequence of either proceeding is to exempt fax advertisements sent with the recipients' permission from the opt-out notice requirement, the burden of litigation on the parties and on this Court will be significantly affected.  Moreover, the primary jurisdiction doctrine further supports granting a stay here, so that both the FCC—which has exclusive authority to waive enforcement of its rules interpreting the TCPA—and the federal Court of Appeals—which has exclusive jurisdiction to review the FCC's Solicited Fax Rule—have an opportunity to weigh in on whether obtaining recipient consent for faxed advertisements is relevant to Plaintiff's claim.  A number of courts across the country have stayed TCPA cases for precisely these reasons.  Lastly, issuing a stay at this early stage will not prejudice or disadvantage the Plaintiff; to the contrary, a stay would conserve party and Court resources while the FCC and D.C. Circuit consider questions that could significantly reduce the scope of alleged liability and damages in this case.

## I.      A STAY IS WARRANTED BECAUSE THE OUTCOME IN EITHER PENDING PROCEEDING COULD SIGNIFICANTLY NARROW THE SCOPE OF THE PUTATIVE CLASS AND DEFENDANT'S ALLEGED LIABILITY.

The stay factors outlined above militate in favor of a stay.  Plaintiff proposes a putative class whose members include anyone that received *solicited* faxes from Defendant.  Specifically, the class definition includes "all persons and entities" that "received a facsimile transmission from Defendant" over the last four years that "promotes Defendant's products" and contains an

"opt-out notice identical or substantially similar" to that included in Exhibit A to the Complaint. (Compl. ¶ 18.)  Plaintiff's claim does not distinguish between solicited and unsolicited faxes. Indeed, Plaintiff contends that Defendant is liable for its alleged failure to comply with the opt-out notice requirement *regardless* of whether the faxes were sent with consent.  (*See id.* ¶ 30 (citing the Solicited Fax Rule to assert that a faxed advertisement is "illegal" unless it includes the required opt-out notice, "regardless of whether the fax is unsolicited").)

If the FCC grants Defendant's request for a pre-April 30, 2015 retroactive waiver of the Solicited Fax Rule, or the D.C. Circuit vacates that Rule as unauthorized under Section 227(b), the legal issues in this action will be streamlined, the scope of discovery and class certification proceedings will be clarified (because recipient consent will indisputably be relevant), and the scope of Defendant's alleged liability and damages in the case will be sharply reduced.

**A.     Defendant Sends Faxes to Pharmacies With Their Permission.**

Plaintiff specifically complains about a fax announcing an insurance formulary update for Accu-Chek test strips, which are used by diabetes patients to monitor their blood glucose level. (*Id.* ¶¶ 13–15 & Ex. A.)  Defendant has received express permission from numerous pharmacies to send such information by facsimile.  *See* Decl. of Lisa A. Spelich, ¶¶ 3–6 (attached hereto as Ex. B).  Although Plaintiff contends it never granted Defendant permission to send it Accu-Chek information by facsimile, (*see* Compl. ¶ 16), Plaintiff did grant such permission.  Ex. B, ¶ 4.

**B.     A Decision to Waive or Invalidate the Solicited Fax Rule Will Impact Plaintiff's Claim and Proposed Class.**

This action is likely to be substantially recast by the FCC's resolution of Defendant's retroactive waiver Petition and/or the D.C. Circuit's ruling on the FCC's Solicited Fax Rule.  For example, if the FCC waives its Rule with respect to solicited faxes that Defendant sent before April 30, 2015, the pharmacies that granted permission to receive Accu-Chek faxes prior to that

10

date would have no cause of action against Defendant and would be excluded from any putative

class.  Similarly, if the D.C. Circuit adheres to the express statutory language restricting the

TCPA's reach to "unsolicited advertisements," and vacates the FCC's unauthorized application

of the opt-out requirement to *solicited* advertisements, the effect on this case will be even greater

because no faxes sent with consent—whether before or after April 30, 2015—would be

actionable.  *See Physicians Healthsource, Inc. v. Endo Pharm.*, No. 14-cv-02289, Dkt. No. 27,

Order at 2 (E.D. Pa. Jan. 5, 2015) (ordering stay of litigation because "the FCC may determine

that the statute does not create a private right of action when a solicited fax advertisement lacks

an opt-out notice") (attached hereto as Ex. C).

    For those reasons, a number of other courts have stayed proceedings in TCPA fax

lawsuits while the defendants in those cases pursued administrative relief from the FCC or

awaited judicial review of FCC regulations.[8]  For instance, in *St. Louis Heart Center, Inc. v.*

---

[8]     *See, e.g.*, *Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, No. 15-cv-1038, 2016 WL 270224, at *2 (E.D. Wis. Jan. 20, 2016) (granting stay pending FCC review of retroactive waiver application); *Gensel v. Performant Tech., Inc.*, No. 13-cv-1196, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015) (granting continued stay pending federal appellate court review of FCC rule regarding TCPA); *Degnen v. Gerzog*, No. 4:15-cv-1103-RLW, 2015 WL 9645986, at *1–2 (E.D. Mo. Aug. 5, 2015) (granting stay pending FCC's resolution of retroactive waiver petition); *Endo Pharm.*, *supra*, (granting stay pending resolution of FCC proceeding challenging Solicited Fax Rule); *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 8:14-cv-00001 JVS-AN, In Chambers Order Granting Defs. Mot. to Stay, Dkt. No. 47 (C.D. Cal. May 22, 2014) (granting stay pending FCC's resolution of retroactive waiver petition) (attached hereto as Ex. D); *Whiteamire Clinic P.A., Inc. v. Quill Corp. et al.*, No. 1:12-cv-05490, Order, Dkt. No. 170 (N.D. Ill. Apr. 9, 2014) (granting stay pending FCC ruling on petition related to Solicited Fax Rule) (attached hereto as Ex. E); *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-cv-1208-SRU, 2014 WL 518992, at *4 (D. Conn. Feb. 3, 2014) (granting stay because the "outcome of Purdue's FCC petition [challenging Solicited Fax Rule] will affect key aspects of this litigation"); *St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.*, No. 4:13-cv-958-JAR, 2013 WL 5436651, at *2 (E.D. Mo. Sept. 27, 2013) (same); *Nack v. Walburg*, No. 4:10-cv-00478-AGF, 2013 WL 4860104, at *1–2 (E.D. Mo. Sept. 12, 2013) (same); *Raitport v. Harbour Capital Corp.*, No. 09-cv-156-SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013) (same); *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-Cv-2224-JCH, 2013 WL 3988671, at *1 (E.D. Mo. July 17, 2013) (same).

*Forest Pharmaceuticals, Inc.*, the court granted the defendant's motion to stay the proceedings pending the FCC's decision on the defendant's petition for a waiver or declaratory ruling.  No. 4:12-cv-2224-JCH, 2013 WL 3988671, at *1 (E.D. Mo. July 17, 2013).  The stay granted by the court in *Forest* covers the duration of "any appeals filed in connection with the ruling."  *Id.*

Similarly, in *Hannahan Endodontic Group, P.C. v. Inter-Med, Inc.*, the court granted the defendant's motion to stay based in part on its "application [to the FCC] for a waiver of the TCPA's opt-out notice requirement as to faxes sent with the recipient's prior express consent"— i.e., the same procedure that Defendant has followed here.  No. 15-cv-1038, 2016 WL 270224, at *1 (E.D. Wis. Jan. 20, 2016).  The court found that a ruling on the defendant's retroactive waiver request "has the potential to sharply curb the scope of the alleged class."  *Id.* at *2.  *See also Physicians Healthsource, Inc. v. Masimo Corp.*, No. 8:14-cv-00001 JVS-AN, In Chambers Order Granting Defs. Mot. to Stay, Dkt. No. 47, slip op. at 4 (C.D. Cal. May 22, 2014) (issuing a stay pending the FCC's resolution of defendant's petition where "[t]he scope of the claims asserted in the [complaint was] broad, and encompasse[d] claims by putative class members who received 'solicited' advertisements; thus, the issue before the FCC [was] potentially dispositive of a large number of claims") (internal citation omitted) (attached hereto as Ex. D).

The same considerations apply here.  A stay could aid in the resolution of Plaintiff's individual claim because Defendant contends that Plaintiff consented to receive the fax at issue. In addition, waiver or invalidation of the Solicited Fax Rule would impact this Court's analysis of Plaintiff's proposed class.  *See Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-cv-1208-SRU, 2014 WL 518992, at *2–3 (D. Conn. Feb. 3, 2014) (individual plaintiff's claims depended at least in part on the FCC's interpretation of the Solicited Fax Rule, and resolution of an FCC petition regarding the question of consent would "have a substantial effect

on the disposition of controlling issues in [the] case, with respect to both certification of the proposed class and the ultimate liability of the defendants").  Accordingly, "in the interests of reaching consistent results in similar TCPA cases," *St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.*, No. 4:13-cv-958-JAR, 2013 WL 5436651, at *2 (E.D. Mo. Sept. 27, 2013), this Court should align itself with the other courts that have stayed proceedings pending FCC review (for retroactive waiver purposes) and/or D.C. Circuit review (under the Hobbs Act) of the Solicited Fax Rule underlying Plaintiff's claim in this case.

## II.    THE PRIMARY JURISDICTION DOCTRINE SUPPORTS A STAY.

Both forms of the primary jurisdiction doctrine are applicable to this case, and both weigh in favor of granting a stay.

### A.    The FCC Has Exclusive Authority to Waive Enforcement of Its Rules

The FCC has primary jurisdiction for interpreting its Rules implementing the TCPA. *See, e.g.*, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010).  It also has exclusive authority to waive compliance with those Rules.  *See* 47 C.F.R. § 1.3.  Thus, only the FCC, and not this Court, may act upon Defendant's pending request for a retroactive waiver of the Solicited Fax Rule.

### B.    The D.C. Circuit's Review of the FCC's Solicited Fax Rule is Exclusive and Binding Upon This Court.

As explained above, only federal courts of appeals may "enjoin, set aside, suspend . . . , or [] determine the validity of" final FCC orders.  28 U.S.C. § 2342(1).  Pursuant to this congressional directive and the JPML's consolidation order, the D.C. Circuit has been vested with exclusive authority to review the FCC's Solicited Fax Rule.  This Court will be bound by the result of the D.C. Circuit proceeding.  *See, e.g.*, *Michigan Bell Tel. Co. v. Lark*, 373 F. Supp.

2d 694, 702 (E.D. Mich. 2005) ("When the D.C. Circuit acts as a Hobbs Act reviewing court, its

decision is binding on this court.") (citing 28 U.S.C. § 2349(a)).

In *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), *cert denied*, 134 S. Ct. 1539 (2014),

the Eighth Circuit considered whether it could hear a challenge to the FCC's Solicited Fax Rule.

The court first observed that, although the FCC's interpretation was consistent with its own

regulation, it was "questionable" whether that regulation "(thus interpreted) properly could have

been promulgated under the statutory section that authorizes a private cause of action [i.e.,

Section 227(b)]." *Id.* at 682.  Nonetheless, the Eighth Circuit determined that the Hobbs Act

precluded it from entertaining a legal challenge to the Rule.  *Id.* at 685–86.  Rather, "[a] party

challenging an FCC regulation as *ultra vires* must first petition the agency itself and, if denied,

appeal the agency's disposition directly to the Court of Appeals as provided by the statute." *Id.*

at 685.  The Eighth Circuit directed the lower court on remand to "entertain any requests to stay

proceedings for pursuit of administrative determination of the issues raised," *id.* at 687, a

directive which the district court subsequently followed.  *See Nack v. Walburg*, No. 4:10-cv-

00478-AGF, 2013 WL 4860104, at *1–2 (E.D. Mo. Sept. 12, 2013).  A number of district courts

have followed suit, invoking the Eighth Circuit's reasoning in *Nack* to stay TCPA fax cases in

the wake of the Hobbs Act challenge to the Solicited Fax Rule, now under review in the D.C.

Circuit.  *See, e.g.*, *Masimo*, Order at 3 (Ex. D); *Degnen v. Gerzog*, No. 4:15-cv-1103-RLW, 2015

WL 9645986, at *2 (E.D. Mo. Aug. 5, 2015); *Purdue Pharma*, 2014 WL 518992, at *3; *Gilead

Palo Alto, Inc.*, 2013 WL 5436651, at *1–2; *Raitport v. Harbour Capital Corp.*, No. 09-cv-156-

SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013); *Forest Pharm., Inc.*, 2013 WL 3988671,

at *1.  This case is no different.

### C.     The Court's Discretionary Factors Further Support Application of the Primary Jurisdiction Doctrine.

The factors articulated by this Court in *Stoll*, 2010 WL 3702359, at *5, also support

ordering a stay in this matter.

### 1.     The Complaint raises a legal question within the FCC's technical and policy expertise.

As noted above, the question of whether the TCPA should be read to require opt-out

notices for solicited advertisements is wholly within the specialized expertise of the FCC and the

D.C. Circuit, which typically reviews that agency's actions.  *See generally United States v. DISH*

*Network, LLC*, No. 09-3073, 2011 WL 475067, at *2–3 (C.D. Ill. Feb. 4, 2011) (applying the

primary jurisdiction doctrine to stay a TCPA claim, in part because "Congress vested the FCC

with the power to implement and interpret the TCPA and the FCC has comparatively greater

expertise than courts for addressing the meaning and bounds [of] the statute's language").

Indeed, the validity and applicability of an FCC regulation is an issue that Congress wants the

expert agency itself to "have first crack at."  *Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d

116, 121 (7th Cir. 1982); *see also Endo Pharm.*, Order at 2 (granting stay in part because the

Solicited Fax Rule falls "within the FCC's domain of specialized knowledge") (Ex. C).

The FCC also has particularized expertise in determining whether Defendant is entitled to

a retroactive waiver—that is, whether Defendant is "similarly situated" to other parties

previously granted such waivers pursuant to the FCC's October 2014 Order.  The agency has

already engaged in this precise inquiry for more than 100 prior petitioners, and is thus uniquely

situated to decide whether the Solicited Fax Rule should be enforced as to Defendant's pre-April

30, 2015 solicited faxes.[9]  If the FCC grants Defendant a waiver, as it has regularly done for

---

[9]     Defendant's Petition does not ask the FCC to decide whether Defendant actually obtained
consent for the faxes at issue in the Complaint.  *See* Ex. A, Pet. at 6.  The FCC has left such

"similarly situated" petitioners, the case would be streamlined significantly. *Ryan*, 935 F.2d at

131 (when judicial economy is served by having the agency resolve a particular issue, that

weighs in favor of staying a case pursuant to the primary jurisdiction doctrine).

> **2.** **Defendant would be subject to potentially conflicting orders absent a stay.**

This factor also weighs in favor of a stay.  If, on the one hand, this Court were to hold

based on the Solicited Fax Rule that Defendant needed to include a TCPA-compliant opt-out

notice on solicited advertisements, while, on the other hand, the D.C. Circuit were to strike down

the FCC's authority under Section 227(b) to apply the opt-out notice requirement to solicited

advertisements, Defendant would be subject to diametrically-opposed standards on the same

issue.  Similarly, if FCC grants Defendant's Petition for a retroactive waiver of the Solicited Fax

Rule, it would be inappropriate for this Court to enforce an FCC regulation that the FCC itself

has decided should not apply.  *See, e.g.*, *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090,

1097 (N.D. Cal. 2015) ("This court is bound by the FCC's interpretations of the TCPA, unless

those interpretations are invalidated by a court of appeals."); *Wright v. Target Corp.*, No. 14-cv-

3031, 2015 WL 8751582, at *5 (D. Minn. Dec. 14, 2015) (same).  In other words, there is a

serious danger that Defendant will be subject to inconsistent rulings if this case proceeds

concurrently with the FCC's or D.C. Circuit's review.  A stay, in contrast, would eliminate this

risk.  *See Endo Pharm.*, Order at 2 (granting stay in part due to "the risk of inconsistent rulings if

the FCC is not permitted to issue its ruling before the courts act") (Ex. C).

---

factual determinations in private litigation to the trier of fact—a task squarely within its
province.  *See* December 2015 Order, 30 FCC Rcd 14057, 14064,  ¶¶ 16, 19.

16

###### 3.     The D.C. Circuit appeal is fully briefed and the FCC Waiver proceeding is underway.

Both the *Bais Yaakov* appeal and Defendant's retroactive waiver Petition have been filed in the appropriate fora, and those actions are already pending.  The FCC's Consumer and Governmental Affairs Bureau has already granted retroactive waivers to over 100 parties.  Given the Bureau's prompt consideration of the petitions filed thus far, it is reasonable to expect that it will act diligently on Defendant's petition.  Similarly, the *Bais Yaakov* proceeding authorized under the Hobbs Act has not only been initiated, but also has been fully briefed by all parties.  Based on the court's typical calendar, case load, and practice, it is expected that the court will set a date for oral argument soon.

Moreover, the likelihood is high that the D.C. Circuit will conclude that the FCC lacked statutory authority under Section 227(b) to apply the opt-out notice requirement to solicited advertisements.  This is yet another factor that leans in favor of issuing a stay.  *Cf. Gensel v. Performant Tech., Inc.*, No. 13-cv-1196, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015).  The Solicited Fax Rule is plainly contrary to the express language of Section 227(b), which only addresses *unsolicited* advertisements.[10]  Indeed, in *Nack*, the Eighth Circuit highlighted the discrepancy between the FCC's interpretation and the statutory language at issue, "question[ing]" whether such a rule could have been promulgated under Section 227(b).  715 F.3d at 682.  The reasoning behind the Solicited Fax Rule is so tenuous that it was not even supported by the full Commission.  Commissioners Pai and O'Rielly both lodged strong dissents, parting ways with the majority on the question of whether the agency had a statutory basis to

---

[10]     Congress used the phrase "unsolicited advertisement" nine separate times when describing the opt-out notice requirement, *see* 47 U.S.C. § 227(b)(1)(C)(iii) (two times), (b)(2)(D) (five times), and (b)(2)(E) (two times), and referred *only* to "unsolicited advertisements" when directing the FCC to adopt rules regarding opt-out notices, *id*. § 227(b)(2)(D).

require opt-out notices for solicited faxes.  *See* October 2014 Order, at 14016–19, 14021–22;

*Gensel*, 2015 WL 6158072, at *2 (granting stay pending outcome of appeals where "it seem[ed]

to the Court, as it seemed to the dissenting Commissioners [Pai and O'Rielly], that the FCC

majority's interpretation of the term 'capacity' contradicts the plain language of the statute" such

that "the FCC's ruling on this issue [was] not entitled to deference on appeal").  For these

reasons, among others, it is reasonable to conclude that the D.C. Circuit may reject the FCC's

interpretation and vacate the Solicited Fax Rule.

### III.    THIS LITIGATION IS AT ITS EARLIEST STAGES, AND PLAINTIFF WILL NOT SUFFER ANY PREJUDICE OR MATERIAL DISADVANTAGE AS A RESULT OF THE REQUESTED STAY.

Plaintiff will not be harmed by the imposition of a stay at this juncture.  Defendant acted

diligently by filing its Motion to Stay shortly after it responded to Plaintiff's Complaint so that

both parties could avoid expending unnecessary resources to litigate this case without further

clarity from the FCC and the D.C. Circuit.  In fact, although Defendant timely moved to dismiss

Plaintiff's state law claims to avoid waiving its argument as to the insufficiency of those claims

under Fed. R. Civ. P. 9(b), Defendant promptly thereafter informed Plaintiff of its intent to file

the instant Motion.  Defendant further offered to consent to an extension of time for Plaintiff to

oppose that motion to dismiss, so that Plaintiff would not need to expend any resources until

after this Motion is resolved by the Court.

Plaintiff will not be meaningfully disadvantaged by pausing the litigation because this

action is in its very earliest stage.  The Complaint was filed a mere two months ago; this is not a

scenario in which the case has dragged on for an extended period of time.  *Cf. Espejo v.*

*Santander Consumer USA, Inc.*, No. 11 C 8987, 2014 WL 4347185, at *2–3 (N.D. Ill. Aug. 28,

2014) (denying stay because case had "languished" for over three years).  At the same time,

Defendant acknowledges its obligation to preserve documents or data that may be relevant to this

dispute, and it has put in place a litigation hold for such materials.  In light of these continuing preservation efforts, there is little risk that relevant discovery in Defendant's possession will be lost or destroyed during the pendency of a stay.  *See Degnen*, 2015 WL 9645986, at *1 (granting motion to stay where defendants collected and preserved available documents and data); *Purdue Pharma*, 2014 WL 518992, at *3 ("[P]laintiff's concerns about destruction or loss of evidence are unfounded given the defendants' express acknowledgment of their evidence-preservation obligations.").

Finally, although the Prayer includes a request for injunctive relief, the crux of Plaintiff's Complaint focuses on Defendant's *previously sent* faxes.  (*See* Compl. ¶¶ 13, 15.)  The Complaint does not allege that Plaintiff is suffering ongoing harm due to Defendant's conduct.  Nor could Plaintiff make such a claim, as Defendant is not currently sending faxes to Plaintiff.  *See* Ex. B, ¶ 7.  Rather, on the basis of its allegations of prior conduct, Plaintiff seeks substantial statutory damages.  (Compl. at ¶ 4, Prayer.)  Imposing a stay now would in no way deprive Plaintiff of its ability to obtain the same monetary relief at a future date.  Moreover, the availability of prejudgment interest adequately protects Plaintiff against any prejudice it may suffer as a result of the delay caused by a stay.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court stay this proceeding pending (1) a decision by the FCC on Defendant's Petition for Waiver, and (2) an opinion from the D.C. Circuit in *Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir.).

Respectfully submitted,


s/ David O. Tittle
David O. Tittle
Jessica Whelan
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204
Telephone:     (317) 635-8900
Facsimile:      (317) 236-9907
dtittle@bgdlegal.com
jwhelan@bgdlegal.com

Eric C. Bosset*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
Telephone:     (202) 662-5606
ebosset@cov.com
*admitted pro hac vice

*Attorneys for Defendant Roche Diagnostics Corporation*

## CERTIFICATE OF SERVICE

I certify that on June 14, 2016, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

| Attorney(s) | Represent(s) |
| --- | --- |
| Irwin B. Levin | Plaintiff, Econo-Med Pharmacy, Inc. |
| Vess Allen Miller | |
| COHEN & MALAD LLP | |
| Email: ilevin@cohenandmalad.com | |
| Email: vmiller@cohenandmalad.com | |

Randall K. Pulliam
CARNEY BATES & PULLIAM, PLLC
Email: rpulliam@cbplaw.com
PRO HAC VICE


s/ David O. Tittle

20