**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ECONO-MED PHARMACY, INC., on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:16-cv-00789-TWP-MPB |
| v. | ) ) | |
| ROCHE DIAGNOSTICS CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF: (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND A SERVICE AWARD**

## I.    <u>INTRODUCTION</u>

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Preliminarily Approving Class Action Settlement, Directing Notice and Scheduling Final Approval Hearing, filed on March 17, 2017 (the "Preliminary Approval Order"), Plaintiff Econo-Med Pharmacy, Inc. ("Plaintiff" or "Class Representative") respectfully submits this memorandum of law in support of (i) final approval of the proposed settlement (the "Settlement") of this class action (ECF No. 62), and (ii) approval of an award of attorneys' fees and costs and a service award (ECF No. 63).

Consideration of the applicable legal standards demonstrates that final approval of the Class Action Settlement Agreement (the "Settlement"), ECF No. 55-1, is warranted in this case. The Settlement provides for a payment of $17,000,000 in cash (the "Settlement Fund") by Defendant Roche Diagnostics Corporation ("Defendant" or "Roche") into a common fund for the benefit of the Settlement Class (defined below), with no provisions for reversion to the

Defendant. Plaintiff and Class Counsel firmly believe that the Settlement represents an excellent recovery, particularly in light of the risks and delays of continued litigation. The Settlement is the product of extensive investigation, aggressive litigation and arm's-length negotiations facilitated by a neutral mediator. The Settlement was negotiated by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and/or defenses. Moreover, the Settlement results in an estimated individual recovery of over $1,100 per Class Member, even after deduction of requested fees and expenses. *See* Ex. A, Declaration of Randall K. Pulliam ("Pulliam Decl.") at ¶ 6.

Additionally, the Settlement enjoys the support of the Settlement Class. The notice plan was implemented in accordance with the Preliminary Approval Order and the Settlement Agreement, and, to date, not one entity has objected to the Settlement and only 20 entities have requested to be excluded. *See* Ex. B, Declaration of Phil Cooper RE: Notice Procedures ("Cooper Decl.") at ¶¶ 13-14. Accordingly, Plaintiff and Class Counsel respectfully request that the Court finally approve the Settlement as fair, reasonable, and adequate and enter the agreed, tendered Final Approval Order.

That this action was able to settle for $17,000,000 is largely attributable to Class Counsel's litigation efforts. The work that led to this result includes extensive investigation into Plaintiff's and the Class's claims, preparing and filing the complaint, engaging in motion practice, including researching and responding to Defendant's motion to dismiss and motion to stay, investigating ongoing litigation in the D.C. Circuit and the potential effect that litigation could have on the claims and/or defenses in this lawsuit (the "Lawsuit"), engaged in informal discovery, exchanging confidential mediation statements, preparing for and participating in mediation, and engaging in arm's length settlement negotiations facilitated by a neutral mediator.

For these efforts, Plaintiff and Class Counsel respectfully request that the Court award attorneys' fees and expenses of $5,639,943, or 33 1/3% of the Settlement Fund less administration fees and the requested service award. Class Counsel also respectfully request that the Court award a modest service award of $5,000 to the Class Representative. As further explained below, the requested fees and costs are reasonable, are consistent with amounts routinely awarded by this Court and other courts in the Seventh Circuit, and are consistent with amounts routinely awarded to Class Counsel in other class action cases.

## II. HISTORY, BACKGROUND, AND SETTLEMENT OF THE ACTION

### A. The Claims, the Litigation, and the Mediation

This Lawsuit was filed as a class action against Roche for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 ("IDCSA"). Specifically, the operative complaint (the "Complaint") in the Lawsuit alleges that Roche violated the TCPA and IDCSA by transmitting unsolicited facsimile advertisements that do not comply with the requirements of those statutes.

On June 1, 2016, Defendant filed a Motion to Dismiss Count II of Plaintiff's Complaint, with a supporting memorandum of law. (ECF Nos. 21 and 22.) On that same date, Defendant filed an Answer. (ECF No. 23.) On June 20, 2016, Plaintiff filed its Opposition to Defendant's Motion to Dismiss. (ECF No. 26.) Defendant filed its reply on June 30, 2016. (ECF No. 27.)

On June 14, 2016, Defendant filed a Motion to Stay Proceedings, with a supporting memorandum of law. (ECF Nos. 24 and 25.), requesting a stay of all proceedings pending decisions (1) by the Federal Communications Commission ("FCC") on Defendant's Petition for Waiver of Section 64.1200(a)(4)(iv) of the Commission's Rules, and (2) by the United States Court of Appeals for the District of Columbia Circuit in *Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir.). Plaintiff filed an opposition to Defendant's Motion to Stay on

July 1, 2016. (ECF No. 28.) By order dated August 1, 2016, the Court entered an order granting Defendant's Motion to Stay pending determination of the Defendant's petition with the FCC, and denying Defendant's request for a stay pending the D.C. Circuit Court's opinion in *Bais Yaakov*. (ECF No. 34.)

On November 11, 2016, Defendant's filed a Notice advising the Court that the FCC had granted its waiver request through April 30, 2015. (ECF No. 38.) The FCC's order provides in relevant part as follows: " . . . these waivers provide relief through April 30, 2015. Any non-compliant faxes (*i.e.* faxes that do not include the required opt-out information) sent after that date are subject to Commission enforcement and TCPA liability." *See id.* at Ex. A, p. 8.

Thereafter, during a telephonic status conference, the Court lifted the stay and authorized discovery to commence. During the discovery phase of the Lawsuit, the parties and their respective counsel agreed to mediate the Lawsuit. In accord with the parties' agreement to mediate, the parties engaged in informal discovery and exchanged confidential mediation statements addressing plaintiff's allegations and Roche's potential defenses thereto, as well as the informal discovery obtained.

On February 7, 2017, the parties and their respective counsel participated in a full-day mediation in Indianapolis, Indiana with mediator William A. Baten, Esq., at which the parties reached an agreement in principle. The terms and conditions of the parties' agreement was memorialized in a memorandum of understanding entitled "Agreement in Principle".

Thereafter, Settlement Class Counsel conducted reasonable confirmatory discovery to verify representations made by Defendant as part of the mediation process, which included interviewing key personnel knowledgeable on key issues in the Lawsuit. Based upon this discovery and Class Counsel's independent investigation of the relevant facts and applicable law,

Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to use the terms and conditions contained in the Agreement in Principle to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

### B. The Settlement Terms

The terms of the Settlement provide for the Defendant to establish a non-reversionary, cash settlement fund of $17 million (the "Settlement Fund") for the benefit of the Settlement Class Members. The Settlement Agreement defines the Settlement Class as follows:

> All pharmacies to which Roche transmitted one or more facsimiles concerning the availability or quality of its property, goods, or services from April 11, 2012 through the date of preliminary approval (the "Settlement Class Period").

In exchange, for the consideration from the Defendant, the Lawsuit will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against the Defendant by any member of the Settlement Class in this Lawsuit, as set forth in the Settlement Agreement.

### C. Preliminary Approval and Notice to Class Members

In accord with the Settlement Agreement, Plaintiff filed an unopposed motion for preliminary approval of the Settlement (ECF No. 55), which the Court granted on March 17, 2017 (ECF No. 57). In accord with the Court's Preliminary Approval Order, an advance on Notice and Administration Costs in the amount of $75,000 was paid to the Settlement Administrator. Thereafter, notice was provided to the Settlement Class by both facsimile and first-class mail, as well as a dedicated settlement website. *See* Cooper Decl. at ¶¶ 6-10 and 12. The contents of the notices advised Settlement Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to share in the recovery, the rights of

Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, and provided specifics on the date, time and place of the final approval hearing. Thus, the notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notices also advised Settlement Class Members that Class Counsel would be requesting attorneys' fees and expenses of up to 33 1/3%, or $5,666,666, as well as a Class Representative service award of $5,000.

To date, not one entity has objected to the Settlement and only 20 entities have requested to be excluded. *See* Cooper Decl. at ¶¶ 13-14.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.

### A. The Law Favors and Encourages Settlements.

"Compromises of disputed claims are favored by the courts." *Clarion Corp. v. Am. Home Prods. Corp.*, 494 F.2d 860, 863 (7th Cir. 1974); *Nat'l Cas. Co. v. White Mts. Reinsurance Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013) (recognizing that "the law generally favors and encourages settlements."). This policy is especially strong with respect to class action litigation, which is notoriously complex. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Amadeck v. Capital One Fin. Corp.*, 80 F. Supp. 3d 781, 788 (N.D. Ill. 2015) (same); *see also Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds at* 134 F.3d 873 (7th Cir. 1998) ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." (internal quotation and citation omitted); Newberg & Conte,

*Newberg on Class Actions*, §11.41 (3d ed. 1992) ("[T]he compromise of complex litigation is encouraged by the courts and favored by public policy").

      B.      <u>The Role of the Court in Determining Whether to Approve a Class Action Settlement</u>.

Rule 23 requires court approval of any voluntary compromise of a class action and requires notice regarding the proposed settlement be provided to all class members. In considering whether to approve a proposed settlement, a court is tasked with determining whether the settlement is fair, reasonable, and adequate. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) ("A district court may approve a class action settlement if it finds it to be fair, adequate, and reasonable."); *Isby,* 75 F.3d at 1196 (noting court's inquiry in approving a class action settlement should be "whether the proposed settlement is lawful, fair, reasonable, and adequate."); *Wilkins v. HSBC Bank Nev., N.A.*, No 14 C 190, 2015 U.S. Dist. LEXIS 23869, at *13 (N.D. Ill. Feb. 27, 2015) ("A court may approve a settlement that would bind class members only if, after proper notice and a public hearing, the court determines that the proposed settlement is fair, reasonable, and adequate." (internal quotations omitted)); *Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 U.S. Dist. LEXIS 152618, at *15 (N.D. Ind. Oct. 24, 2013) ("A district court must scrutinize and evaluate a class action settlement to determine whether it is fair, reasonable, and adequate." (internal quotations omitted)); *cf. Lambrecht v. Taurel*, No. 1:08-cv-68-WTL-TAB, 2010 U.S. Dist. LEXIS 75633 (S.D. Ind. June 8, 2010) ("*Eli Lilly*"). In this regard, a court may afford a presumption of fairness when, as here, the settlement is reached following arm's-length negotiations. *Manual for Complex Litigation*, §30.43 at 289 (3d ed. 2002); *Newberg on Class Actions*, §11.42 (3d ed. 1992) ('[A]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length

bargaining."); *Armstrong*, 616 F.2d at 325; *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 321 (N.D. Ill. 1979).

Importantly, in reviewing a proposed settlement, a court should not substitute its own judgment of fairness and adequacy for that of the litigants and their counsel (*Armstrong*, 616 F.2d at 315) or transform settlement approval proceedings into a mini-trial on the merits. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987); *Armstrong*, 616 F.2d at 314-15; *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (in considering a settlement, a district court must "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"). Consistent with this approach, evaluations of fairness, reasonableness, and adequacy require that the facts be viewed in a light most favorable to the settlement and that the terms of the settlement are viewed in their entirety and not in isolation. *Isby*, 75 F.3d at 1199.

When viewed under these standards, it is clear that the Settlement is fair, reasonable, and adequate and, as such, is entitled to final approval.

C.     The Settlement is Entitled to a Presumption of Fairness.

"[I]t may be presumed that the agreement is fair and adequate where . . . a proposed settlement is the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10, n.2 (N.D. Ill. Oct. 10, 1995); *Gillespie v. Equifax Info. Servs., LLC*, No. 05-C-0138, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. 2009) ("A settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly

presumed to be fair and adequate."); *Susquehanna*, 84 F.R.D. at 321.

Here, the Settlement was intensely negotiated by attorneys with substantial experience in class action litigation. *See* Pulliam Decl. at ¶ 2 and Ex. 1; Ex. C, Declaration of Irwin B. Levin ("Levin Decl.") at ¶ 2. Moreover, at the time the Settlement was reached, each side had a keen understanding of the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *See* Pulliam Dec. at ¶ 3. Based on their knowledge of the factual and legal issues applicable to this case, as well as their years of experience, it is the considered judgment of Class Counsel that the Settlement is in the best interest of the Class. Pulliam Decl. at ¶ 6; Levin Decl. at ¶ 3.

Furthermore, throughout the course of this litigation, Plaintiff's and Defendant's counsel have zealously and vigorously represented the interests of their respective clients, without a trace of collusion. In fact, the Settlement was only reached with the help of a neutral mediator. *See* Pulliam Decl. at ¶ 5. As such, there is no reason to doubt that the Settlement was achieved in good faith through arm's-length negotiations and that Plaintiff was represented by experienced and competent counsel who professionally handled this matter in the best interest of the Class. Against this backdrop, the Settlement is entitled to a presumption of fairness and adequacy. *Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *10 n.2; *Gillespie*, 2009 U.S. Dist. LEXIS 131242, at *10.

D.    All Criteria for Approving the Settlement Are Satisfied.

This Court should grant final approval to the Settlement because the Settlement is "fair, reasonable, and adequate," and represents a favorable outcome for the Settlement Class Members when judged against the total possible outcome weighed against the risks, expenses, and uncertainty of continued litigation.

In evaluating whether a settlement is fair, reasonable, and adequate, courts within the Seventh Circuit apply the factors articulated in *Isby*:

> These include the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.

75 F.3d at 1199; *Wong*, 773 F.3d at 863 (restating factors); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *19 (N.D. Ill. Aug. 26, 2013) (same).[1] For the reasons discussed below, the *Isby* factors all weigh in favor of the Settlement. Consequently, the Court should grant final approval of the Settlement.

### 1. The Strength of Plaintiff's Case as Compared to the Amount of the Settlement.

The most important factor in assessing a class settlement is the strength of the plaintiff's case on the merits compared with the amount offered in the settlement. *Synfuel Techs. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing I*n re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); *Isby*, 75 F.3d at 1199; *Armstrong*, 616 F.2d 305, 314, 322 (7th Cir. 1980). "In conducting this analysis, the district court should begin by 'quantifying the net expected value of continued litigation to the class.'" *Id.* (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002). Integral to this analysis is the court's "consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Thus, in weighing this factor, a court must assess the value of the proposed settlement against the total

---

[1] Not every factor will be relevant to every settlement, and a court need not find every factor satisfied in order to approve the settlement; rather, this reasonableness inquiry is highly case-specific and individualized. *See, e.g.*, *Hiram Walker*, 768 F.2d at 890 (describing the court's reasonableness inquiry as "equitable and subjective" in nature).

amount that the class could recover, discounted by the weaknesses and risks inherent in the class's claims.

Here, while Plaintiff and Class Counsel believe that Plaintiff's claims and allegations were and are meritorious, they also recognize the possibility that Plaintiff's claims would not succeed and they would be unable to secure the substantial relief for the Class achieved by the Settlement, and might even fail to obtain any relief at all. Indeed, if the Lawsuit were to continue, Plaintiff and the Class would face a number of difficult challenges, including the risks of an unfavorable opinion on Defendant's motion to dismiss and/or a development in the D.C. Circuit case *Bais Yaakov* that could potentially adversely affect Plaintiff's claims in this Lawsuit. Although Plaintiff remains confident that it would prevail on each of these legal issues, Plaintiff also recognizes the risks inherent in continued litigation.

In comparison, the Settlement provides a significant recovery for the Settlement Class. Specifically, the Settlement results in monetary benefits to the members of the Settlement Class now, not some distant time in the future. Moreover, the value of the Settlement to individual Settlement Class Members is remarkable. The Settlement requires Defendant to pay $17 million into a settlement fund out of which eligible class members will receive their pro rata share. Pursuant to the Plan of Allocation, it is anticipated that eligible Settlement Class Members could receive individual recoveries of approximately $1000. Thus, the Settlement provides fair and reasonable value to Settlement Class Members now, while avoiding the substantial risks and costs of continued litigation, including no recovery at all after years of litigation. Accordingly, this factor favors approval of the Settlement. *See Amadeck*, 80 F. Supp. 3d at 789-90 (finding a recovery per claimant of $34.60 on TCPA claim with $500 statutory recovery available per violation fell within range of reasonableness); *see, e.g.*, *In re Cendant*

*Corp. Sec. Litig.*, 264 F.3d 201, 242 (3d Cir. 2001) (approving a settlement that amounted to 9.25% of total damages); *In re Ravisent Techs., Inc. Sec. Litig.*, Civ. Action No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *33 (E.D. Pa. Apr. 18, 2005) (finding a percentage of recovery amounting to 12.2% was within the range of reasonableness and further noting that a study by Professor John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia University Law School, determined that since 1995, class action settlements have typically recovered 'between 5.5% and 6.2% of the class members' estimated losses); *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 131-2 (S.D.N.Y. 1997) (finding a recovery of between 7% to 20% within the range of reasonableness in light of the best recovery at trial and all the attendant risks of litigation).

### 2. Assessment of the Complexity, Length, and Expense of Litigation

As noted above, continued litigation of Plaintiff's claims would no doubt entail intensive, lengthy, and costly proceedings. Indeed, prior to Settlement, Defendant's Motion to Dismiss was pending with the Court. Moreover, Plaintiff would undoubtedly face vigorous opposition on any Motion for Class Certification, with Defendant likely challenging Plaintiff's ability to satisfy each of the requirements of Federal Rule of Civil Procedure 23. Against this backdrop, the issue of the propriety of class certification in this Action is far from a "foregone conclusion," heightening the litigation risks confronting the Plaintiff in this Lawsuit. *See Coburn v. Daimlerchrysler Servs. N. Am., L.L.C.*, 218 F.R.D. 607, 610 (N.D. Ill. Oct. 28, 2008) (noting that "it is not a foregone conclusion that" the proposed class, which was limited to Illinois and Iowa, was appropriate). In addition, any order granting class certification would be subject to modification or reversal at anytime. *See Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

Plaintiff also believes that further pre-trial proceedings in this case would be marked by complex, expensive, and contested discovery, dispositive motions, expert reports and related discovery, and *Daubert* motions. *See Unite Nat'l Ret. Fund v. Watts* ("*Shell Derivative*"), No. 04-CV-3603, 2005 U.S. Dist. LEXIS 26246, at *10 (D.N.J. Oct. 28, 2005) ("The Court assumes that should this litigation have ensued, the parties would have engaged in a significant amount of discovery, pre-trial motions, an extensive trial followed by post-trial motions and an appeal, all of which would be at great expense.").

Even assuming Plaintiff was able to surmount the foregoing pre-trial hurdles, its claims would be subject to the unpredictability of a lengthy, complex, and expensive jury trial. At trial, a jury would have been presented with the Defendant's denial of wrongdoing. While Plaintiff and Class Counsel believe they would be able to provide convincing evidence, they also understand the risks of trail. *See In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 697 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) (defense verdict after 37-day bench trial, which included 9,360 pages of transcript from 24 witnesses, thousands of pages of deposition transcripts, and 1,033 trial exhibits that filled more than 22 3.5 inch binders).

Lastly, even if Plaintiff prevailed at trial, the Defendant has fought strenuously throughout the life of this litigation, and there is no reason to believe it would not have made post-trial motions and pursued appeals to the Seventh Circuit. This would obviously involve further delay and expense, possibly postponing final resolution of Plaintiff's claims for years. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (delay from appeals is a factor to be considered).

The Settlement avoids all of these delays, uncertainties, complexities, and expenses and offers immediate and substantial benefits to the Settlement Class. Consequently, this factor

weighs in favor of approving the Settlement. *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 U.S. Dist. LEXIS 23869, at *24 (N.D. Ill. Feb. 27, 2015) (finding that like other consumer class actions, continued litigation of the action would involve significant discovery and motion practice, expert testimony, and lengthy trial and appeal, all of which weigh in favor of approval of the proposed settlement)

### 3. Lack of Opposition to the Settlement.

Courts view the absence of opposition to a settlement by affected parties as a factor strongly supporting judicial approval of the settlement. *See Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791-wmc, 2013 U.S. Dist. LEXIS 171316, at *3 (W.D. Wis. Dec. 5, 2013) (relying on the lack of objections as evidence of the settlement's fairness, reasonableness, and adequacy); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement[ ].").

To date, no Class member has filed an objection to any aspect of the Settlement, and only 20 Class members have requested to be excluded. Cooper Decl. at ¶ 13-14. Equally notable, 5,367 claim forms have been identified as valid by the Settlement Administrator, representing a total of 10,060 fax numbers from the class list. *See* Cooper Decl. at ¶ 15. These claimants range from small boutique pharmacies to some of the largest retail pharmacies in the world. Thus, the Settlement enjoys the overwhelming support of the Class. Hence, this factor favors final approval of the Settlement.

### 4. Opinion of Competent Counsel.

The support for the Settlement from the parties' experienced counsel also weighs in favor of final approval. *See Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898,

2011 U.S. Dist. LEXIS 84219, at *39-40 (N.D. Ill. July 26. 2011) ("The court is entitled to rely heavily on the opinion of competent counsel" in approving a settlement.).

As set forth above, both parties are represented by well-respected law firms that have extensive experience in complex litigation and that vigorously pursued their respective clients' interests. The Settlement Agreement was the product of extended arm's-length negotiations between these seasoned attorneys, and facilitated by mediation with a highly-experienced mediator. *See* Pulliam Decl. at ¶¶ 3 and 5. Both sides zealously pressed their positions throughout the litigation process, and continued to do so while negotiating the language for their formal written agreement. Accordingly, the assessment of counsel for the parties on the Settlement as fair and reasonable is entitled to great deference. *See Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *10 n.2; *Susquehanna*, 84 F.R.D. at 321.

5. The Stage of the Proceedings and Amount of Discovery Completed.

The relevant question here is "whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement, and whether the Court has sufficient information to evaluate such a settlement." *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 242, 259 (E.D.N.Y. 2009). In this regard, although the Settlement was reached in a relatively early stage of the litigation, there has been an extensive and thorough exchange of information relative to the issues and merits of the Action to justify approval of the proposed Settlement.

More particularly, Plaintiff negotiated the Settlement on a fully informed basis and with a thorough understanding of the merits and value of the parties' claims and defenses. As set forth above, the Settlement was reached only after Class Counsel conducted an extensive factual investigation into the Defendant's alleged misconduct, thoroughly researched the law pertinent to the Class's claims and the Defendant's defenses, responded to the Defendant's motion to dismiss

and motion to stay, engaged in informal discovery, and exchanged confidential mediation statements and participated in mediation. *See* Section II, supra; *see also* Pulliam Decl. at ¶¶ 3-5. Moreover, Class Counsel further engaged in confirmatory discovery to confirm the reasonableness of the Settlement. Because of Class Counsel's experience in litigating these types of claims, Plaintiff and Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiff's case and assess the adequacy of the Settlement in light of the strengths and weaknesses of their position. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (quoting *Armstrong*, 616 F.2d at 325) (finding the claims had clearly reached the stage where the parties were "'fully . . . able to evaluate the merits of plaintiffs' claims.'"); *see also Cohn*, 375 F. Supp. 2d at 855 ("In assessing the merits of the Settlement, plaintiffs' counsel considered the factual and legal questions that were disputed in the derivative actions. The Court is convinced the proposed Settlement was reached after counsel had conducted an extensive investigation . . . .").

6. <u>Approval of the Settlement is in the public interest.</u>

In addition to the foregoing, the Settlement also advances the public interest. As explained above, avoiding the expense and time that would be involved in further litigation in the trial and appeals courts benefits the parties as well as the public interest in judicial efficiency. *See generally Isby*, 75 F.3d at 1196; *Armstrong*, 616 F.2d at 312–13. Expenditure of further time and resources by the parties and the courts on additional litigation would not guarantee greater returns for the Class Members—indeed, it would risk eliminating any Class recovery and would not better vindicate the public policies underlying the laws at issue in this case.

In sum, the criteria established by the Seventh Circuit strongly support a finding that the Settlement is fair, reasonable, and adequate. Accordingly, the Court should grant final approval.

## IV.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

Here, in its Preliminary Approval Order, the Court previously determined that certification of the action for settlement purposes is appropriate.  Specifically, the Court found that the Settlement Class satisfied each of the requirements of Arkansas Rule of Civil Procedure 23 in that (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the Plaintiff's claims are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class; (e) the common questions of law and fact predominate; and (f) the class mechanism is the superior method for fairly and efficiently adjudicating the Lawsuit.  For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## V.    AS COMPENSATION FOR THEIR EFFORTS, PLAINTIFF'S COUNSEL SHOULD BE AWARDED A REASONABLE PERCENTAGE OF THE SETTLEMENT FUND AS ATTORNEYS' FEES AND COSTS.

### A.    The requested attorneys' fees are fair and reasonable.

To compensate Class Counsel for their efforts, the Court should approve an award of attorneys' fees in the amount of $5,639,943, which represents 33 and 1/3% of the Settlement Fund after the deduction of the service award ($5,000) and costs of notice and settlement administration ($75,000).

Rule 23(h) expressly authorizes the Court to "award reasonable attorney's fees" from a common fund in a class action case. Fed. R. Civ. P. 23(h). In this Circuit, courts have expressed a preference for the "percentage of the recovery" approach to determining a reasonable attorneys' fee, recognizing the "advantages" to utilizing the percentage method "because of its relative simplicity of administration," and confirming that using a percentage approach alone is

well within the discretion of a district court. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *see also Standard Iron Works v. Arcelormittal*, Case No. 08-5214, 2014 U.S. Dist. LEXIS 162557 (N.D.Ill. Oct. 22, 2014). The "percentage of the recovery" approach favored by the Seventh Circuit is also the most accurate approach to determining a reasonable fee in this case, because it "award[s] counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

In determining the "market price" for legal services, the Seventh Circuit has instructed district courts to "balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of class members in the fund." *Florin*, 34 F.3d at 565 (citation omitted). "A court must assess the riskiness of the litigation by measuring the probability of success of this type of case at the outset of the litigation." *Id.* (citations omitted; emphasis original). By consulting the market for legal services, in light of the attorney's risk of non-recovery, the Court may estimate the "reasonable percentage" that the parties would have agreed to as a fee at the outset of the litigation, and not in hindsight. *Sutton*, 504 F.3d at 693.

Under this analysis, Class Counsel's requested fee award of one-third is a very reasonable percentage of the value of benefits recovered for the Class. "'The normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment." *George v. Kraft Foods Global, Inc.*, No. 1:08-cv-3799, 2012 U.S. Dist. LEXIS 166816, at *7-*8 (N.D. Ill. Jun. 26, 2012) (quoting *In re Ready-Mixed Concrete Antitrust Litig.*,

No. 1:05-CV-00979, 2009 U.S. Dist. LEXIS 132343, at *34 (S.D. Ind. Mar. 31, 2009) (Barker, J.)).[2]

A one-third fee is also overwhelmingly common in this District for class action cases. *See, e.g.*, *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *3 (S.D. Ind. Nov. 20, 2012) (Pratt, J.) (awarding 33.3% of the common fund of $90 million); *In re Guidant Corp. ERISA Litig.*, No. 05-cv-1009, slip op. at 2 (S.D. Ind. Sept. 10, 2010) (McKinney, J.) (38% of the common fund); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09–01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (McKinney, J.) (awarding one-third of recovery as attorneys' fees); *Williams v. Rohm & Haas Pension Plan*, No. 4:04-cv-0078-SEB-WGH, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) (Barker, J.) (awarding one-third of recovery ($43.5 million) as attorneys' fees); *In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (Barker, J.) (33.3% of the common fund); Order Granting Plaintiffs' Motion for Approval of Proposed Plan of Distribution of Settlement Funds,

---

[2] *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (explaining that in class actions "the usual range for contingent fees is between 33 and 50 percent"); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598-99 (N.D.Ill. 2011) (awarding one-third of a $9.5 million settlement fund, and noting that "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range"); *In re Kentucky Grilled Chicken Coupon Marketing and Sales Practices Litig.*, No. 09-7670, 2011 WL 5599129, at *13 (N.D. Ill. Nov. 15, 2011) (Holderman, J.) (awarding fees of 32.7% of the cash common fund, and noting that "[t]he going rate in the market of class action legal fees suggests a fee at or in excess of the fee requested here"); *Saf-T-Gard Int'l., Inc., v. Seiko Corp. of Am.*, No. 09-0776 (N.D. Ill. Jan 14, 2011) (awarding one-third of the common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (Guzman, J.) (awarding a fee of one-third of the settlement, and noting that "[t]hirty-three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000); *Will v. General Dynamics Corp.*, Civ. No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market' is '33.33% of the common fund recovered.") (quotations omitted); *Meyenburg v. Exxon Mobil Corp.*, No. 05-15, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal market-place for comparable commercial litigation."); *Teamsters Local Union No. 604 v. Inter-rail Transport, Inc.*, No. 02-1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In [the Seventh Circuit], a fee of thirty-three and one-third (33-1/3%) in a class action is not uncommon.").

Award of Attorneys' Fees and Reimbursement of Expenses, and Award of Class Representatives' Incentive Fee from Beavery and Hughey Settlements, *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979, Dkt. No. 849 (S.D. Ind. May 17, 2010) (Barker, J.) (awarding 33 1/3% of recovery as attorneys' fees); Order Granting Plaintiffs' Motion for Approval of Proposed Plan of Distribution of Settlement Funds, Award of Attorneys' Fees and Reimbursement of Expenses, and Award of Class Representatives' Incentive Fee, *In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, Dkt No. 732, slip op. at 13 (S.D. Ind. Mar. 31, 2009) (Barker, J.) (awarding 33.3% of the common fund; citing 2008 data supporting one-third fee).

And a one-third fee is also common throughout district courts in the Seventh Circuit. *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40%) (citation omitted); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("Where the market for legal services in a class action is only for contingency fee agreements . . . , 'the normal rate of compensation in the market' is '33.33% of the common fund recovered.") (quoting *Will v. Gen. Dynamics Corp.*, No. CIV.06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)); *Pavlik v. FDIC*, No. 10-816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) (one-third fee); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597-600 (N.D. Ill. 2011) (one-third fee); *Martin v. Caterpillar, Inc.*, No. 07-1009, slip op. at 7 (C.D. Ill. Sept. 10, 2010) (one-third fee); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (one-third fee); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (one-third fee); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill.

Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Lithotripsy Antitrust Litig.*, No. 98-8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (noting that "[m]any courts in this district have utilized" the percentage method to set fees in class actions; "33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards"); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (noting that courts in the Seventh Circuit award attorneys' fees "equal to approximately one-third or more of the recovery").

Consistent with the foregoing, Class Counsel have received fee awards of 33 and 1/3% or more of total settlement value in both state and federal court within the Seventh Circuit. *See* Levin Decl. at ¶¶ 5-12; Pulliam Decl. at ¶ 10.

Moreover, the factors identified by the Seventh Circuit in establishing the market rate for legal fees in a common fund case, including "the risk of nonpayment a firm agrees to bear . . . the quality of its performance . . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case[,]" *In re Synthroid*, 264 F.3d at 721, strongly counsel in favor of an award of the requested attorneys' fee. Class Counsel's risk of nonpayment in this case has been, from the outset, "inescapably contingent." *Florin*, 34 F.3d at 566. The risks of nonpayment include the difficulty of proving the merits of the claims, the challenge of certifying a litigation class, and the risk of a defense verdict at trial. Class Counsel accepted this litigation, in light of the risks, rewards, and complexity, for a 33 1/3% fee. *See* Pulliam Decl. at ¶ 5. This fee is fair and reasonable, the rate that Class Counsel normally commands in the market, and consistent with fees awarded in this District and this Circuit.

### B. The requested service award is fair and reasonable.

The Court should award the Class Representative an incentive fee of $5,000 for its time and effort in representing the Settlement Class Members and for the results achieved for the

Settlement Class. When deciding whether a class representative incentive award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2009).

In this case, from the very outset the Class Representative resolved to benefit the entire Class, and not only itself. *See* Pulliam Decl. at ¶ 4. The Class Representative actively consulted with Class Counsel throughout the case on a regular basis. *See id.* These efforts have resulted in eligible Class Members receiving checks averaging approximately $1,100. *See id.* at ¶ 6. Now that a substantial recovery has been achieved on behalf of the Settlement Class, the Class Representative's efforts in bringing and litigating this case should be recognized and should be rewarded.

The requested service award is modest in light of the significant and important benefits obtained for the Settlement Class, and is equal to or less than the amount that has been awarded in other class actions. *See, e.g.*, *Lively v. Dynegy, Inc.*, No. 05-CV-0063-MJR, 2008 U.S. Dist. LEXIS 75774 (S.D. Ill. Sept. 30, 2008) (awarding $10,000 to each of three plaintiffs); *Morlan v. Universal Guar. Life Ins.*, No. Civ. 99-274-GPM, 2003 U.S. Dist. LEXIS 20961 (S.D. Ill. Nov. 20, 2003) (awarding $25,000, $20,000, $20,000 and $5,000 respectively to class representatives). The Court should therefore approve the service award in the amount of $5,000 to the Class Representative.

## VI.    CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's Motion for Final Approval of Class Action Settlement and grant Plaintiff's Motion for Award of Attorneys' Fees and Costs and a Class Representative Service Fee.

DATED: August 21, 2017      Respectfully submitted,

           s/Vess A. Miller     
           Irwin B. Levin
           Vess A. Miller
           **COHEN & MALAD, LLP**
           One Indiana Square, Suite 1400
           Indianapolis, IN 46204
           Tel. (317) 636-6481
           Fax (317) 636-2593
           ilevin@cohenandmalad.com
           vmiller@cohenandmalad.com

           Randall K. Pulliam
           **CARNEY BATES & PULLIAM, PLLC**
           519 W. 7th St.
           Little Rock, Arkansas 72201
           Telephone:  (501) 312-8500
           Facsimile:  (501) 312-8505
           rpulliam@cbplaw.com

## **CERTIFICATE OF SERVICE**

   I certify that on August 21, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

           s/Vess A. Miller     
           COHEN & MALAD, LLP
           One Indiana Square, Suite 1400
           Indianapolis, IN 46204
           Telephone:  (317) 636-6481
           Facsimile:  (317) 636-2593