# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ECONO-MED PHARMACY, INC., on behalf of itself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| ROCHE DIAGNOSTICS CORPORATION, | ) ) ) ) |
| Defendant. | ) |

No. 1:16-cv-00789-TWP-MPB

## ENTRY ON PLAINTIFF'S MOTION
## FOR AWARD OF ATTORNEYS' FEES AND COSTS
## AND A SERVICE AWARD

This matter is before the Court on Plaintiff's Motion for Approval of Attorneys' Fees and Costs and a Service Award, and the Court being duly advised, finds that the motion should be, and hereby is, **GRANTED**.

## BACKGROUND

This Lawsuit was filed as a class action against Roche for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 ("IDCSA"). Specifically, the operative complaint (the "Complaint") in the Lawsuit alleges that Roche violated the TCPA and IDCSA by transmitting unsolicited facsimile advertisements that do not comply with the requirements of those statutes.

On June 1, 2016, Defendant filed a Motion to Dismiss Count II of Plaintiff's Complaint, with a supporting memorandum of law. (ECF Nos. 21 and 22.) On that

same date, Defendant filed an Answer. (ECF No. 23.) On June 20, 2016, Plaintiff filed its Opposition to Defendant's Motion to Dismiss. (ECF No. 26.) Defendant filed its reply on June 30, 2016. (ECF No. 27.)

On June 14, 2016, Defendant filed a Motion to Stay Proceedings, with a supporting memorandum of law. (ECF Nos. 24 and 25), requesting a stay of all proceedings pending decisions (1) by the Federal Communications Commission ("FCC") on Defendant's Petition for Waiver of Section 64.1200(a)(4)(iv) of the Commission's Rules, and (2) by the United States Court of Appeals for the District of Columbia Circuit in *Bais Yaakov of Spring Valley, et al. v. FCC*, No. 14-1234 (D.C. Cir.). Plaintiff filed an opposition to Defendant's Motion to Stay on July 1, 2016. (ECF No. 28.) By order dated August 1, 2016, the Court entered an order granting Defendant's Motion to Stay pending determination of the Defendant's petition with the FCC, and denying Defendant's request for a stay pending the D.C. Circuit Court's opinion in *Bais Yaakov*. (ECF No. 34.)

On November 11, 2016, Defendant's filed a Notice advising the Court that the FCC had granted its waiver request through April 30, 2015. (ECF No. 38.) The FCC's order provides in relevant part as follows: " . . . these waivers provide relief through April 30, 2015. Any non-compliant faxes (*i.e.* faxes that do not include the required opt-out information) sent after that date are subject to Commission enforcement and TCPA liability." *See id.* at Ex. A, p. 8.

Thereafter, during a telephonic status conference, the Court lifted the stay and authorized discovery to commence. During the discovery phase of the Lawsuit,

2

the parties and their respective counsel agreed to mediate the Lawsuit. In accord with the parties' agreement to mediate, the parties engaged in informal discovery and exchanged confidential mediation statements addressing plaintiff's allegations and Roche's potential defenses thereto, as well as the informal discovery obtained.

On February 7, 2017, the parties and their respective counsel participated in a full-day mediation in Indianapolis, Indiana with mediator William A. Baten, Esq., at which the parties reached an agreement in principle. The terms and conditions of the parties' agreement were memorialized in a memorandum of understanding entitled "Agreement in Principle."

Thereafter, Settlement Class Counsel conducted confirmatory discovery to verify representations made by Defendant as part of the mediation process, which included interviewing key personnel knowledgeable on key issues in the Lawsuit. Based upon this discovery and Class Counsel's independent investigation of the relevant facts and applicable law, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to use the terms and conditions contained in the Agreement in Principle to negotiate, finalize, and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

The terms of the Settlement provide for the Defendant to establish a non-reversionary, cash settlement fund of $17 million (the "Settlement Fund") for the benefit of the Settlement Class Members. Class Counsel has estimated that each

Settlement Class Member will receive no less than $1,100, which will be mailed directly to them by check. (Pulliam Decl., ¶ 6, ECF No. 64-1.) The Settlement Agreement defines the Settlement Class as follows:

> All pharmacies to which Roche transmitted one or more facsimiles concerning the availability or quality of its property, goods, or services from April 11, 2012 through the date of preliminary approval (the "Settlement Class Period").

In exchange, for the consideration from the Defendant, the Lawsuit will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against the Defendant by any member of the Settlement Class in this Lawsuit, as set forth in the Settlement Agreement.

In accord with the Settlement Agreement, Plaintiff filed an unopposed motion for preliminary approval of the Settlement (ECF No. 55), which the Court granted on March 17, 2017 (ECF No. 57). In accord with the Court's Preliminary Approval Order, an advance on Notice and Administration Costs in the amount of $75,000 was paid to the Settlement Administrator. Thereafter, notice was provided to the Settlement Class by both facsimile and first-class mail, as well as a dedicated settlement website. (Cooper Decl. at ¶¶ 6-10, 12, ECF No. 64-2.) The contents of the notices advised Settlement Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to share in the recovery, the rights of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, and provided specifics on the date, time and place of the final approval hearing. Thus, the notices provided the necessary information for

4

Settlement Class Members to make an informed decision regarding the proposed Settlement. The notices also advised Settlement Class Members that Class Counsel would be requesting attorneys' fees and expenses of up to 33 1/3%, or $5,666,666, as well as a Class Representative service award of $5,000.

To date, not one entity has objected to the Settlement and 20 entities have requested to be excluded. (Cooper Decl. ¶¶ 13-14, ECF No. 64-2.)

The Court granted preliminary approval to the Settlement, finding that it was within the range of possible final approval. (ECF No. 57.) The Court certified the Plaintiff Class, approved the form of notice to the Class, set deadlines for Class Members to object to or opt out of the Settlement, and set a Fairness Hearing for September 20, 2017. (ECF No. 57.)

The Plaintiff has now moved for final approval of the Settlement, which the Court has granted by separate order, and has moved for approval of attorneys' fees to be paid from the Settlement Fund in the amount of $5,639,943, which represents 33 and 1/3% of the Settlement Fund after the deduction of the service award ($5,000) and costs of notice and settlement administration ($75,000), and for approval of a $5,000 service fee to the Class Representative, also to be paid from the Settlement Fund, with the remainder of the Settlement Fund to be distributed pro rata to the Class Members.

## DISCUSSION

### I. Service Award

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to

participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2009). When deciding whether an incentive award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Id.*

No Class Member has objected to the payment of a $5,000 service award to the Class Representative, and the factors listed above are easily met. The Class Representative took the initiative to bring this case on behalf of not just itself but thousands of others, and the Class Representative's efforts have resulted in a fair and reasonable settlement. The Class Representative committed time and effort to the litigation and settlement, conferred with counsel, and had input regarding settlement. In view of the Class Representative's efforts and the benefits afforded to the Class, the Court authorizes and directs payment of a $5,000.00 service award to Econo-Med Pharmacy, Inc.[1]

## II. Attorneys' Fees

Class Counsel seeks approval of attorneys' fees of $5,639,943, which represents 33 and 1/3% of the Settlement Fund after the deduction of the service

---

[1] This award is well within the range typically awarded by Courts. *See, e.g.*, *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding $25,000 incentive fee each to two class representatives); *Lively v. Dynegy, Inc.*, No. 05-CV-0063-MJR, 2008 WL 4657792 (S.D. Ill. Sept. 30, 2008) (awarding $10,000 to each of three plaintiffs); *Morlan v. Universal Guar. Life Ins.*, No. Civ. 99-274-GPM, 2003 WL 22764868 (S.D. Ill. Nov. 20, 2003) (awarding $25,000, $20,000, $20,000 and $5,000 respectively to class representatives); *Spicer v. Chicago Board Options Ex., Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993) (collecting cases awarding incentive fees ranging from $5,000 to $100,000; awarding $10,000 each to named plaintiffs).

award ($5,000) and costs of notice and settlement administration ($75,000). To determine if the fee is appropriate, the Court follows the *ex ante* approach. This approach asks the Court to assign fees that "mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). Courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time" the litigation began. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*" ). Additional factors include the quality of the attorneys' performances, and the stakes in the case. *Synthroid I*, 264 F.3d at 721.

After being provided with notice of the requested fee, no Class Member objected to the 33 1/3% requested fee. Class Counsel has also shown the Court that they have routinely been awarded a contingent fee of 33 1/3% (and in some cases more) of a Settlement Fund. (*See generally* Levin Aff., ECF No. 64-3.) In addition, Class Counsel have provided the Court with numerous decisions in this District and this Circuit in which a contingent 33 1/3% fee was awarded. *See, e.g.*, *Heekin*, 2012 WL 5878032, at *3 (S.D. Ind. Nov. 20, 2012) (collecting cases and awarding 33 1/3% ($30 million) fee). The Court finds that the *ex ante* approach in this case leads to a contingent fee award of 33 1/3% of the fund, after deduction of the service fee and costs of notice and administration.

## CONCLUSION

For the reasons set forth above, Class Counsel's request for attorneys' fees in the amount of 33 1/3%, or $5,639,943, to be paid from the Settlement Fund is **GRANTED**, and the request for the Class Representative, Econo-Med Pharmacy, Inc., to be awarded a $5,000 service award from the Settlement Fund is **GRANTED**.

Date: 9/21/2017

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:
Service of this Order will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.